## FARGO GLASS & PAINT CO. v. GLOBE AMERICAN CORP. et al.

Civ. A. No. 46 C 1079.

United States District Court
N. D. Illinois, E. D.

Nov. 6, 1951.

Bernard Buchholz, Edward Atlas, Harry G. Fins, Chicago, Ill., for plaintiff.

Winston, Strawn, Black & Towner, Chicago, Ill., Cartwright, George B. Christensen, Edward J. Wendrow, Chicago, Ill., of counsel, for defendants.

IGOE, District Judge.

## Findings of Fact

The Court finds:

1. Plaintiff, Fargo Glass & Paint Company (hereinafter referred to as "Fargo"), is a corporation organized and existing under the laws of the State of North Dakota since 1917, having its principal offices at Fargo, North Dakota.

2. Defendant, Globe American Corporation (hereinafter referred to as "Globe"), is a corporation organized and existing under the laws of the State of Indiana since 1930, having its principal offices at Kokomo, Indiana.

3. Defendant, The Maytag Company (hereinafter referred to as "Maytag"), is a corporation organized and existing under the laws of the State of Delaware since 1925, having its principal offices at Newton, Iowa.

4. From 1935 to the present time, except during World War II, when major home appliances were not available, Fargo has engaged in the business of a distributor of home appliances.

5. Since 1930, Globe has operated two manufacturing divisions, one at Macomb, Illinois, known as the "Macomb Division", and the other at Kokomo, Indiana, known as the "Kokomo Division". The Macomb Division has manufactured various types of agricultural equipment. During the period from 1930 to the present time (except during the period from 1942 through part of 1945, when it was engaged in the manufacture of life boats and other equipment for the Government), the Kokomo Division has manufactured various types of stoves and ranges.

6. In 1937 the Kokomo Division commenced the manufacture of gas ranges under the name of "Dutch Oven", or "Globe Dutch Oven", and sold these ranges in interstate commerce. These gas ranges are hereinafter referred to as "Dutch Ovens".

7. The Dutch Oven combines two utilitarian features—automatic shut-off and heat retention. No other gas range on the market has the unique combination of these two features.

8. Globe nationally advertised Dutch Ovens with declarations as follows:

"Exclusive, The *Only* Range In The World That *Automatically* Turns Off Its Own Gas And Keeps On Cooking."

"Only Dutch Oven automatically turns off the gas and keeps right on cooking."

9. Globe is now, and since 1937 has been, the only manufacturer of automatic shut-off, heat-retained gas ranges in the United States.

10. No distributor of home appliances in the United States, including Fargo, could obtain automatic shut-off, heat-retained gas ranges from any manufacturer other than Globe.

11. Some of the features of the Dutch Oven are covered by United States patents owned by Globe, and the defendants have so advertised same.

12. For several years prior to 1945, Globe made plans for the post-war reconversion of the Kokomo Division to peacetime work, and for the post-war distribution and sale of Dutch Ovens throughout all of the States of the United States and the District of Columbia.

13. By 1944, Globe determined to confine the manufacturing facilities of the Kokomo Division to the manufacture of Dutch Ovens exclusively.

14. In 1944, it sold its solid fuel stove business to the Indianapolis Stove Company.

15. In 1944, it engaged the engineering firm of Sanderson & Porter of New York City to study and submit plans for plant arrangement of then existing and new facilities of the Kokomo Division; said firm completed its study and rendered its report to Globe.

16. In 1944, it engaged the engineering firm of Barnes & Reinecke of Chicago, Illinios, to design and engineer tools and features and to lay out methods for Dutch Oven production.

17. In November, 1944, Globe authorized the expenditure of $36,000 for advertising Dutch Ovens in national publications during the year 1945.

18. Globe set up reserves for post-war reconversion which by November, 1945, attained the amount of $200,000.

19. Globe had sufficient funds for post-war reconversion.

20. By July 18, 1945, Globe had established with Harris Trust and Savings Bank of Chicago, and The Northern Trust Company of Chicago, a revolving credit of one million dollars for the purpose of having free working capital in its post-war undertaking.

21. In July, 1945, Globe authorized the expenditure of approximately $50,000 towards the purchase of enameling furnaces and conveyor chains.

22. By September, 1945, Globe established a nation-wide system of distribution and sale for said Dutch Ovens through 65 distributors (that is, wholesalers), 45 key dealers (that is, dealers who undertook to buy Dutch Ovens in carload lots) and over 3,000 dealers located throughout the United States; said distributors agreed to buy Dutch Ovens from Globe and were to sell the same to dealers.

23. Globe furnished its distributors with forms of "Dealer Application for Globe American Corporation Dutch Oven Franchise" for use by the distributors in obtaining dealers to retail Dutch Ovens. Said 65 distributors, pursuant to the provisions of their distributors' agreements which required them to establish dealers for Dutch Ovens, secured the execution of said forms by over 3,000 dealers and submitted said applications to Globe. By August, 1945, Globe had orders for approximately 35,000 Dutch Ovens.

24. On February 26, 1945, Globe entered into a distributor's agreement with Fargo, granting Fargo a franchise for the sale of Dutch Ovens in the following territory:

The State of North Dakota.

In the State of South Dakota, the counties of Roberta, Grant, Marshall, Brown, McPherson, Day, Edmunds, Campbell and Walworth.

The Minnesota counties of Kittson, Roseau, Marshall, Pennington, Red Lake, Polk, Norman, Clay, Wilkin, Traverse,

Lake of the Woods, Beltrami, Clearwater, Mahnomen, Becker, Otter Tail and Grant.

25. In its national advertising Globe listed Fargo as one of its distributors.

26. By September 19, 1945, Fargo had secured 154 dealers in its territory for Dutch Ovens.

27. Fargo is a competent distributor of home appliances.

28. Globe praised the work of Fargo in writing, and also in its publication, "Globe Trotter".

29. Maytag, in 1944 and 1945, was seeking to obtain a manufacturer who would manufacture gas ranges for it to distribute.

30. During the year 1945, Maytag sought to make an arrangement with the manufacturer of the "Chambers" gas range and with the manufacturer of the "Roper" gas range to manufacture gas ranges for it, but failed to obtain such an arrangement from said gas range manufacturers.

31. During August and September 1945 Maytag through its officers, and Globe, through its officers, agreed that Maytag should purchase from W. Dow Harvey, Chairman of the Board of Globe, and his wife, the common shares of Globe owned by them, totalling 32,535 common shares, in consideration of which Globe would grant to Maytag the exclusive distribution of Dutch Ovens.

32. Globe had outstanding 100,000 shares of common stock.

33. Maytag entered into a written agreement, dated September 19, 1945 with Alden P. Chester, President and a director of Globe and with Mark A. Brown and Earl B. Barnes, directors of Globe, whereunder it was agreed *inter alia:*

(a) Maytag agreed to purchase not less than 40,000 shares of Globe and the parties agreed to procure the resignation of the directors and officers of Globe at a special meeting to be called at the earliest convenient date. The parties agreed to cause Globe to retain in its service Alden P. Chester, as President, and A. G. Sherman, as Vice President, for at least one year.

(b) The parties agreed that they would use their best efforts to cause Globe and Maytag to enter into a working agreement, to be effective for a reasonable time thereafter, which would assure to Maytag the prior right and privilege of purchasing for resale the entire output of gas ranges and related products to be manufactured at the plant of the Kokomo Division.

34. On September 19, 1945, Alden P. Chester was the owner of 8,263 shares, Mark A. Brown was the owner of 11,142 shares, and Earl B. Barnes was the owner of 2,118 shares of the common stock of Globe.

35. On September 19, 1945, Maytag purchased 40,159 shares of the common stock of Globe from Harvey, his wife, and certain other stockholders of Globe, so that on that date Maytag, Alden P. Chester, Mark A. Brown and Earl B. Barnes owned 61,682 shares of the outstanding common stock of Globe.

36. The agreement by Maytag to purchase, and its purchase, of such Globe stock was not made by Maytag for the purpose of acquiring an investment in Globe, but was made for the sole object of acquiring from Globe the exclusive distribution of Dutch Ovens and of eliminating the competition of said 65 distributors and 45 key dealers in the business of distributing Dutch Ovens, in interstate commerce.

37. On the same day, September 19, 1945, at the hour of 2:30 P.M., a special meeting of the Board of Directors of Globe was held. At this meeting, W. Dow Harvey resigned as Chairman of the Board and Mark A. Brown was elected as Chairman of the Board in his place. At this meeting five of the nine members of the Board of Directors of Globe resigned and in their places were elected as directors Fred Maytag, II, (President and a director of Maytag), George M. Umbreit (Vice President and a director of Maytag), Roy A. Bradt (Vice President and a director of Maytag), J. G. Gamble (attorney for Maytag), and Paul H. Durham (a resident of Kokomo). At this meeting a resolution was unanimously adopted, as follows: "On motion made, seconded and carried unanimously, the President was directed immediately to take all steps necessary to cancel and terminate all contracts, written

statements of intention, and all other arrangements with distributors, key dealers and others, relating to future sales and distribution of gas ranges and products of Globe American Corporation, and that such steps be taken and notices given at the earliest possible date."

38. On the same day, September 19, 1945, at the hour of 3:30 P.M., another meeting of the Board of Directors of Globe was held, attended by the new Board of Directors. At this meeting, a resolution was unanimously adopted, directing the President of Globe, on behalf of Globe, to execute a written contract with Maytag, dated September 19, 1945, entitled "Working Agreement".

39. On the same day, September 19, 1945, Globe and Maytag entered into said agreement, whereunder Globe agreed to sell Maytag its entire output of Dutch Ovens and Maytag agreed to purchase from Globe its entire requirements of gas ranges for distribution throughout the United States and elsewhere.

40. In order to carry out its agreement with Maytag, and pursuant to the contract between Maytag, Alden P. Chester, Mark A. Brown and Earl B. Barnes, Globe, on or about September 27, 1945, cancelled its agreements with its 65 distributors, including Fargo, and on or about October 1, 1945, cancelled its agreements with its 45 key dealers.

41. At the time of said cancellation, Fargo was still engaged in obtaining dealers for Dutch Ovens.

42. Since September 19, 1945, to the present time, all of said 65 distributors, including Fargo, and said 45 key dealers, and all other persons, were excluded from the distribution of Dutch Ovens, and Maytag has been the exclusive distributor for said Dutch Ovens.

43. The said exclusion was an undue and unreasonable restraint of interstate trade and commerce.

44. The evidence does not support the contention of the defendants that if Globe had not constituted Maytag exclusive distributor for Dutch Ovens, Globe would not have produced Dutch Ovens.

45. Maytag neither paid nor advanced any money to Globe prior to the time of the delivery of Dutch Ovens to Maytag by Globe in November, 1946.

46. Maytag has advertised that "Only Maytag Dutch Oven automatically shuts off the gas and keeps right on cooking".

47. From October, 1946, to January 28, 1951, Maytag purchased from Globe 212,298 Dutch Ovens.

48. From November 30, 1948, to January 28, 1951, Maytag has sold 99,558 Dutch Ovens for the amount of $13,581,074.82.

49. From September 19, 1945, to January 28, 1951, Maytag sold 3,477 Dutch Ovens in Fargo's territory and made a net profit from such sales in the amount of $39,560.36.

50. The effect of the provision of the Tentative Distributor Sales Agreements entered into between Globe and its 65 distributors that: "The Distributor will not sell or handle other articles that are the same as or similar in purpose to the products of the Company covered in this agreement, unless said other products are purchased at a cost 25% below the net cost of Dutch Oven Gas Ranges" is to substantially lessen competition in gas ranges. Said provision is in violation of Section 3 of the Clayton Act, 15 U.S.C.A. § 14, and is void. Fargo could have handled and contemplated handling gas ranges in addition to Dutch Ovens.

### Conclusions of Law

The Court concludes that:

1. The Court has jurisdiction of this action by virtue of Section 4 of the Clayton Act, Title 15 U.S.C.A. § 15.

2. The acts of the defendants constitute a combination and conspiracy which are in undue and unreasonable restraint of trade and commerce among the several states of the United States in the distribution of the automatic shut-off, heat-retained gas ranges manufactured by the defendant, Globe American Corporation, in violation of Section 1 of the Sherman Act, Title 15, U.S.C.A. § 1.

3. The contracts of the defendants are in undue and unreasonable restraint of trade and commerce among the several states of the United States in the distribution of the automatic shut-off, heat-retained gas ranges manufactured by the defendant, Globe American Corporation, in violation of Section 1 of the Sherman Act, Title 15 U.S.C.A. § 1.

4. The defendants have combined and conspired to monopolize and have monopolized, trade and commerce among the several states of the United States in the distribution of the automatic shut-off, heat-retained gas ranges manufactured by the defendant, Globe American Corporation, in violation of Section 2 of the Sherman Act, Title 15 U.S.C.A. § 2.

5. The effect of the acquisition by the defendant, The Maytag Company, which is a corporation engaged in interstate commerce, of common stock of the defendant, Globe American Corporation, another corporation also engaged in interstate commerce, tended to, and did, create a monopoly in The Maytag Company, in the distribution of the automatic shut-off, heat-retained gas ranges manufactured by the defendant, Globe American Corporation, among the several states of the United States, in violation of Section 7 of the Clayton Act, Title 15 U.S.C.A § 18.

6. Plaintiff is a person who has been injured in its business by reason of the defendants' acts forbidden in the anti-trust laws, and is entitled to recover from the defendants threefold damages by it sustained, and the cost of suit, including reasonable attorneys' fees, as provided by Section 4 of the Clayton Act, Title 15 U.S.C.A. § 15.

7. The net profits made by The Maytag Company from the sale of automatic shut-off, heat-retained gas ranges manufactured by Globe American Corporation, in the territory granted plaintiff by Globe American Corporation is a proper measure of plaintiff's damages, and plaintiff is entitled to recover a judgment in an amount equal to treble the amount of such net profits (namely $39,560.36), together with costs and reasonable attorneys' fees.